# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| INTL FCSTONE FINANCIAL, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 19 C 1438 |
| DAVE and LINDA JACOBSON, et al., | ) ) Judge Joan H. Lefkow |
| Defendants. | ) ) |

## OPINION AND ORDER

INTL FCStone Financial Inc. has sued several defendants to enjoin them from further pursuing their pending arbitration at the Financial Industry Regulatory Authority (FINRA), which FCStone claims is the wrong arbitral forum. FCStone also asks the court to compel defendants to arbitrate their claims before the National Futures Association (NFA). Defendants have moved to dismiss the complaint and for sanctions against FCStone for pursuing its claim for injunctive relief.

Construing the parties' arbitration agreements and FINRA's rules, the court concludes that the parties agreed to arbitrate their disputes before the NFA, not FINRA, and enters declaratory judgment to that effect, as detailed below.[1] The court therefore (1) grants FCStone's motion to compel arbitration (dkt. 33); (2) denies FCStone's motion for preliminary injunction

---

[1] Defendants William and Cynthia Motley did not sign an arbitration agreement. They did not contract to arbitrate anywhere and are not defendants to FCStone's count to compel arbitration.

(dkt. 7) without prejudice; (3) denies defendants' motion to dismiss (dkt. 38); and (4) denies defendants' motion for sanctions (dkt. 50).[2]

## BACKGROUND

FCStone is a global financial services firm. Among its services is a futures commission merchant division that helps execute and clear exchange-traded futures, commodities, and options transactions. Separate from that division, FCStone also engages in securities-related business and is therefore a member of FINRA, a self-regulatory organization for the securities and investment banking industry. FINRA members agree to arbitrate before FINRA any disputes with their "customers" that "arise[] in connection with the business activities of the member" on the customer's request. FINRA Rule 12200, *available at* http://finra.complinet.com/en/display/display_main.html?rbid=2403&element_id=4106 (last visited May 31, 2019).

Between October 2016 and July 2018, defendants opened trading accounts with FCStone's futures commission merchant division. Their account agreements did not permit them to trade any securities. (Dkt. 32-3 at 2 (permitting "purchase and sale of futures contracts, option contracts thereon, commodity futures, cash commodities forward contracts, currency conversions, on-exchange foreign currency-denominated financial instruments, cleared swaps and transactions related thereto").) All defendants except William and Cynthia Motley also signed arbitration agreements with FCStone, agreeing, among other things, that

> [a]ny controversy o[r] claim arising out of or relating to your accounts shall be settled by arbitration, either (1) under the Code of Arbitration of the National Futures Association, or (2) upon the contract market on which the disputed transaction was executed or could have been executed. . . . At the time you notify . . . the FCM Division of INTL FCStone Financial Inc ("FCM") . . . . of your intent to submit a claim to arbitration, . . . you will have an opportunity to elect a qualified forum for conducting the proceedings, and will be supplied with a list of

---

[2] The court has jurisdiction under 28 U.S.C. § 1331, as discussed below. Venue lies on 28 U.S.C. § 1391(b).

> qualified organizations. You are required to send notice of your intent to arbitrate by certified mail to the FCM and/or the Introducing Broker at their respective addresses, and the Secretary of the National Futures Association.

(Dkt. 32-2.)

The defendants experienced significant losses in their accounts in November 2018 based on volatility in the natural gas market—so significant that defendants owed balances to FCStone. On December 3, 2018, defendants to the original complaint—the Jacobsons, Musial, the Slanecs, the Schweigers, the Holcombs, the Rogerses, the Greaveses, and Pradko (and their related trusts) ("Original Defendants")—initiated arbitration against FCStone before FINRA, alleging among other things that FCStone violated § 13(a) of the Commodity Exchange Act, 7 U.S.C. § 13c(a).

Taking this as notice of a dispute under the arbitration agreements, FCStone emailed defense counsel on December 13, 2018 offering arbitration at any of three forums: (1) the NFA; (2) the Chicago Mercantile Exchange; or (3) the American Arbitration Association (AAA). (Dkt. 32-7 at 1.) Defense counsel responded that the arbitration agreement was unenforceable because it did not comply with 17 C.F.R. § 166.5—the Commodity Futures Trading Commission's (CFTC) regulation governing arbitration agreements between Commission registrants like FCStone and their customers—and insisted on arbitration before FINRA. (*Id.*) In February 2019, more than forty-five days after offering its slate of arbitral options, FCStone initiated arbitration before the NFA to collect the original defendants' balances due. (Dkt. 33-2 ¶ 8 & Exh. A.)

Late in the briefing on the motions in this case, the parties apprised the court that some of the defendants also filed notices of claim before the AAA. FCStone offered AAA arbitration in its December 13, 2018 email to defense counsel, attaching the AAA's commercial arbitration rules. Eight customers who are not parties to this case or the related case *FCStone* v. *Farmer*, No. 19-cv-1629 (N.D. Ill.), demanded arbitration before the AAA in December 2018 under the AAA's consumer rather than commercial arbitration rules. (*See* dkt. 49-2 (FCStone's objection

to eight nonparties' AAA arbitration).) FCStone objected, insisting that it had no agreement with its customers to arbitrate before the AAA, but did not advise the AAA that it had included the AAA as one of its three options in the December 13 email. (*Id.*) The AAA found it lacked jurisdiction over the nonparty customers' disputes. (Dkt. 65-2.)

On January 29, 2019, more than forty-five days after FCStone's December 13 email, defense counsel notified FCStone that all his clients—including most of the defendants here[3]—elected to arbitrate before the AAA. (Dkt. 65-1 at 2 (providing notice); *id.* at 3 (notice postmarked Jan. 29, 2019).) In February 2019, the AAA found that FCStone had not agreed to arbitrate defendants' disputes before the AAA. (Dkt. 65-2.)

In February 2019, FCStone filed this action for injunctive and declaratory relief, arguing that FINRA lacks jurisdiction over the underlying disputes. After failing to secure arbitration before the AAA, many customers filed statements of claim before FINRA in March 2019. In April, FCStone amended its complaint to add these customers as new defendants, along with a new count under § 4 of the Federal Arbitration Act, 9 U.S.C. § 4, to compel defendants (except the Motleys) to arbitrate their disputes before the NFA. These motions for preliminary injunction (dkt. 7) and to compel arbitration (dkt. 33) followed. Defendants have also moved to dismiss the complaint under Rules 12(b)(1) and 12(b)(6) (dkt. 38) and for Rule 11 sanctions (dkt. 50).

**ANALYSIS**

**I.      Jurisdiction**

FCStone is a Florida corporation with its principal place of business in New York. The defendants named in the amended complaint are citizens of two foreign countries and seventeen

---

[3] The record does not suggest that the Original Defendants, Zukel, the Caitlins, Ferrell, Deena Gandhi, Grady, the Almoses, Johnson, Tristani, Svejdova, the Milnes, Nees, the Gages, the Hrons, Friesner, Tyrrell, and Mannisto (or any related entities) demanded AAA arbitration. Neither did the Motleys, who did not sign an arbitration agreement.

4

states; none is from Florida or New York. But while the individual defendants are completely diverse from FCStone, some of the individuals are named "individually and on behalf of" an LLC, a limited partnership, or a trust, and FCStone does not plead the citizenship of those entities. Diversity jurisdiction might exist, but not as FCStone pleads the amended complaint.

The court instead has subject matter jurisdiction under 28 U.S.C. § 1331, which requires FCStone to show that the complaint "arises under" federal law. In its amended complaint, FCStone pleads one count under § 4 of the Federal Arbitration Act. Section 4 does not itself confer jurisdiction; instead, it provides that "[a] party aggrieved by the alleged failure . . . to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28 . . . ." 9 U.S.C. § 4. To determine whether the court would have had jurisdiction save for the arbitration agreement, a "federal court may 'look through' a Section 4 petition to determine whether it is predicated on an action that 'arises under' federal law . . . ." *Vaden* v. *Discover Bank*, 556 U.S. 49, 62, 129 S. Ct. 1262 (2009). Because all underlying disputes include claims under § 13(a) of the Commodity Exchange Act, 7 U.S.C. § 13c(a), the disputes present federal questions and this court has jurisdiction. To the extent FCStone's remaining claims arise under state law, the court has supplemental jurisdiction over those claims under 28 U.S.C. § 1367.[4]

In their motion to dismiss, defendants argue that the court lacks jurisdiction to decide procedural issues before the arbitrator. (Dkt. 38 at 4 (citing *Howsam* v. *Dean Witter Reynolds*,

---

[4] FCStone's claim for injunctive relief might also be considered as arising under § 4 of the Federal Arbitration Act, though FCStone does not cite the Act in that count. That would make it a federal claim as well, because although *Vaden* concerned actions to compel arbitration, its reasoning applies to actions to stop arbitration that allegedly do not comply with an arbitration agreement. *See Magruder* v. *Fidelity Brokerage Servs.*, 818 F.3d 285, 287 (7th Cir. 2016) ("*Vaden* holds that, when a claim proposed to be arbitrated arises under federal law, a federal court has subject-matter jurisdiction to rule on a petition to compel or forbid arbitration.").

5

*Inc.*, 537 U.S. 79, 84, 123 S. Ct. 588 (2002)).) Defendants conflate jurisdiction to hear a case with the propriety of relief. If the controversy could be in federal court but for the arbitration agreement, as this one could, the court has subject-matter jurisdiction. *Vaden*, 556 U.S. at 62. Whether the court can or should grant certain relief once it has jurisdiction is a separate question, to which the court now turns.

## II. Motion to Compel Arbitration

### A. General Arbitration Principles

FCStone has moved to compel defendants (other than the Motleys) to arbitrate their disputes before the NFA. Under § 4 of the Federal Arbitration Act, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Federal courts "will compel arbitration under the Federal Arbitration Act 'if three elements are present: (1) an enforceable written agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate.'" *A.D.* v. *Credit One Bank, N.A.*, 885 F.3d 1054, 1060 (7th Cir. 2018) (quoting *Scheurer* v. *Fromm Family Foods LLC*, 863 F.3d 748, 752 (7th Cir. 2017)).

Under the Federal Arbitration Act, courts presumptively decide whether parties have agreed to arbitrate in the first instance, but arbitrators decide any procedural questions that grow out of the dispute. *Howsam*, 537 U.S. at 84. Absent clear and unmistakable evidence that the parties intended to arbitrate the issue of arbitrability (which neither party argues exists here), the court must determine arbitrability. *First Options of Chicago* v. *Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920 (1995).

Where to arbitrate is a question of arbitrability, not procedure. FCStone asks the court to determine whether it agreed under FINRA Rule 12200 to submit these disputes to FINRA and whether defendants agreed under the arbitration agreements to submit them to the NFA, quintessential decisions for a court under the Federal Arbitration Act. *Howsam*, 537 U.S. at 84 ("[A] disagreement about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy is for the court."). That no party proposes litigation instead of arbitration is irrelevant. Had defendants tried to litigate the dispute and FCStone moved to compel arbitration, the court would have had to review the arbitration agreements to determine whether defendants agreed to arbitrate at the NFA. Had FCStone tried to litigate and defendants moved to compel arbitration before FINRA, the court would have had to determine whether FCStone agreed through Rule 12200 to submit its claims to FINRA. The analytical tasks are the same here as in those cases where the issue is unquestionably committed to the court. *Id.* The court must therefore decide whether (1) defendants agreed to submit these disputes to the NFA; and (2) FCStone agreed to submit these disputes to FINRA.

Defendants urge that even though this case presents an issue of arbitrability for the court, because FINRA arbitration is already underway, the court is powerless to rule on arbitrability until that arbitration ends. In *AT&T Broadband, LLC* v. *International Brotherhood of Electrical Workers*, the court held that AT&T had agreed to "a system that postpones until after the arbitral decision any judicial review of the question whether a particular dispute was arbitrable." 317 F.3d 758, 762 (7th Cir. 2003). That described the state of affairs for AT&T's arbitration clause with a union under the Norris-LaGuardia Act, which provides that "[n]o court of the United States . . . shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute," with limited exceptions. *Id.* at

7

759 (citing 29 U.S.C. § 101). But the court also ruled in broad language that because arbitrating a claim cannot irreparably harm a party, a party cannot ask a court to rule on the arbitrability of an arbitration already underway. *Id.* at 762.

In contrast to *AT&T Broadband*, the parties have initiated two competing arbitrations here, one of which requires the court's assistance to proceed, which *AT&T Broadband* recognizes as an appropriate case for the court to determine arbitrability before arbitration. *Id.* (explaining that court appropriately decides arbitrability before arbitration when party "invoke[s] the court's assistance to oblige a reluctant [counterparty] to arbitrate a dispute"). Deferring a ruling on arbitrability here would abdicate the court's duty under § 4 of the Federal Arbitration Act. FCStone is therefore not required to complete the FINRA arbitration before seeking the court's input on whether it agreed to arbitrate in either FINRA or the NFA.

B.  **Arbitration Agreements**

There is no dispute that all defendants but the Motleys signed arbitration agreements. The agreements purport to permit arbitration only at the relevant exchange market or at a futures association. (Dkt. 32-2.) Defendants argue that this makes the agreements unenforceable because they violate CFTC Rule 166.5, which requires FCStone to offer a third option. *See* 17 C.F.R. § 166.5(c)(5)(i). But the arbitration agreements advise that the customers will be given a choice among qualified forums, and FCStone in fact offered the three forums required under Rule 166.5(c)(5)(1). (Dkt. 32-2.) This structure—that the agreement lists only two options, but the email to the customers provided the required third—complies with Rule 166.5, and the arbitration agreements are therefore enforceable. Rule 166.5(c)(4) requires that "[t]he agreement . . . advise the customer that . . . the customer will have the opportunity to elect a qualified forum," 17 C.F.R. § 166.5(c)(4), but does not require that the election-of-forum process be set

8

forth explicitly in the agreement, 17 C.F.R. § 166.5(c)(5) (election-of-forum process lacks "agreement must advise" language). FCStone's agreements thus complied with the requirement to advise that the defendants could choose and then providing an appropriate slate of options, here (1) the NFA; (2) the Chicago Mercantile Exchange; and (3) the AAA. (Dkt. 32-7.) FCStone has therefore satisfied the first element of enforceable agreements to arbitrate.

Defendants concede that these disputes fall within the scope of the arbitration agreements, satisfying the second element. As to the third element, defendants did not arbitrate in accordance with their agreements. After receiving notice of the underlying disputes, FCStone provided defendants a list of three qualified organizations: (1) the NFA; (2) the Chicago Mercantile Exchange; and (3) the AAA. (Dkt. 32-7 at 1.) Defendants did not choose among the three offered forums within forty-five days, which authorized FCStone to pick the NFA. 17 C.F.R. § 166.5(c)(5). Indeed, the Original Defendants went a step further, immediately rejecting all three options in favor of FINRA. (Dkt. 32-7.) FCStone thus chose the NFA in compliance with the arbitration agreements and CFTC Rule 166.5, and defendants' refusal to arbitrate there satisfies the third element.

Defendants respond with several alternative theories of compliance, but none persuades the court. First, they claim that they properly chose the AAA but FCStone reneged on its promise to arbitrate there, falsely telling the AAA that it had not agreed. (Dkt. 49 at 6–7 & n.3; dkt. 65-1 at 1.) Unless FCStone provided context that did not find its way into the record here, FCStone's representation to the AAA that it did not agree to arbitrate with the first claimants at the AAA appears misleading. But those claimants are not parties to this case. These defendants either did not notify FCStone of their election until after the deadline passed (dkt. 65-1 at 3 (notice postmarked Jan. 29, 2019)), expressly rejected the AAA in favor of FINRA (dkt. 37-6 at 1

9

(claiming on Dec. 17, 2018 that arbitration agreements violate CFTC Rule 166.5)), or never filed demands for arbitration before the AAA. (*Supra* n.3.) As these defendants failed to choose in time, FCStone's choice of the NFA stands under the agreements.

Second, defendants argue that FINRA was an option under the arbitration agreements, emphasizing the agreements gave defendants "an opportunity to elect a qualified forum for conducting the proceedings . . . ." (Dkt. 32-2.) But they ignore the crucial context that before choosing a forum, defendants would "be supplied with a list of qualified organizations." (*Id.*); *see Curia* v. *Nelson*, 587 F.3d 824, 829 (7th Cir. 2009) (quoting *Gallagher* v. *Lenart*, 874 N.E.2d 43, 58, 226 Ill. 2d 208 (2007)) (contractual provisions must be read in context).[5] Read in context, "elect a *qualified* forum" means elect among the "list of *qualified* organizations." (Dkt. 32-2 (emphasis added).) Because FINRA was not on the list, defendants could not elect it under the arbitration agreements.

Defendants also advance a variant of this argument, claiming that under *Transatlantic Lines LLC* v. *Amergent Techs, LLC*, 186 F. Supp. 3d 223 (D. Conn. 2016), a party does not "refuse" arbitration if it has initiated arbitration anywhere. In that case, Amergent initiated arbitration proceedings in California; Transatlantic sought to compel Amergent to instead arbitrate in Connecticut. *Id.* at 224–25. But the parties' arbitration clause said only that "disputes under this Agreement shall be resolved through arbitration." *Id.* at 224. The court thus reasoned that Amergent did not refuse to arbitrate because the arbitration clause permitted arbitration anywhere. *Id.* at 226–27. Here, the agreement specified particular arbitral forums, FCStone properly chose one of them, and defendants refuse to arbitrate there.

---

[5] Illinois law governs. *See First Options*, 514 U.S. at 944.

10

Finally, citing *Belom* v. *Nat'l Futures Assoc.*, 284 F.3d 795, 797 (7th Cir. 2002), defendants protest that their disputes cannot be arbitrated before the NFA because arbitration there must be "voluntary." It is voluntary. Defendants agreed to arbitrate before the NFA when they signed their arbitration agreements. As the Motleys show, the defendants were not required to sign the agreements to open their commodity futures and options accounts with FCStone.

Thus, under the arbitration agreements and CFTC Rule 166.5(c), defendants signed enforceable agreements to arbitrate their disputes at one of three qualified forums and if they failed to choose within forty-five days, FCStone would choose for them. Having consented to this procedure and failed to choose a qualified option in time, defendants agreed to submit their disputes to the NFA.

### C. FINRA Rules

Defendants next argue that, notwithstanding the arbitration agreements, FCStone must arbitrate these disputes before FINRA because it is a FINRA member. FCStone is indeed a member of FINRA, and FINRA members agree to arbitrate certain disputes before FINRA. Among eligible disputes are those between members and their customers if the disputes "arise[] in connection with the business activities of the member . . . ." FINRA R. 12200; *UBS Fin. Servs., Inc.* v. *W. Va. Univ. Hosp., Inc.*, 660 F.3d 643, 649 (2d Cir. 2011) (holding FINRA membership compels members to arbitrate disputes with customers before FINRA).

Specifically, FINRA members must arbitrate a dispute under the FINRA Code[6] if "either: (1) Required by a written agreement, or (2) Requested by the customer;" and if:

- The dispute is between a customer and a member or associated person of a member; and

---

[6] Arbitration under the FINRA Code necessarily means arbitration before FINRA. *Credit Suisse Securities (USA) LLC* v. *Tracy*, 812 F.3d 249, 254 (2d Cir. 2016).

11

- The dispute arises in connection with the business activities of the member or the associated person, except disputes involving the insurance business activities of a member that is also an insurance company.

FINRA R. 12200.

FCStone argues that because FINRA regulates only securities and investment banking, defendants (including the Motleys) are not "customers" under FINRA Rule 12200 because they held commodity futures and options accounts and dispute commodity futures and options transactions. Defendants respond that the commodities/securities distinction is only hair splitting. But securities and commodity futures and options are distinct—so distinct that Congress has erected different regulatory regimes and enforcement agencies for the different financial products. *See, e.g.*, *Bd. of Trade of City of Chicago* v. *S.E.C.*, 187 F.3d 713, 716 (7th Cir. 1999) ("Congress allocated securities and options on securities to exchanges regulated by the SEC, futures and options on futures to boards of trade regulated by the CFTC."). *Amicus* Futures Industry Association helpfully explains these differences and how Congress has given exclusive jurisdiction over commodity-related financial products to the CFTC. (Dkt. 62 at 5 (citing 7 U.S.C. § 2(a)(1)(A) and *Chicago Mercantile Exch.* v. *S.E.C.*, 883 F.2d 537, 539 (7th Cir. 1989) ("The CFTC regulates futures and options on futures; the SEC regulates securities and options on securities; jurisdiction never overlaps.").) FINRA, as a self-regulatory organization in the securities market, is overseen by the U.S. Securities and Exchange Commission and has a distinct sphere of influence that Congress has carefully separated from the CFTC's sphere. (*See* dkt. 62 at 5.) The underlying disputes here concern accounts and transactions of commodity futures and options, not securities; indeed, defendants were not even authorized to trade securities through their FCStone accounts. (*See* dkt. 20-1 at 12.) Defendants' relationships and disputes with FCStone do not fall within FINRA's regulatory ambit.

The case thus turns on whether defendants were "customers" under FINRA Rule 12200 even though they did not transact with FCStone's FINRA-regulated business activities. The FINRA Rules define "customer" only by exclusion—that it "shall not include a broker or dealer." FINRA R. 12100(k). But coupling this definition with the broader structure of the FINRA Rules, the circuit courts to have addressed this issue have concluded that FINRA members submit to FINRA arbitration only with customers of their FINRA-regulated business activities, securities and investment banking. *See, e.g.*, *UBS Fin. Servs., Inc.* v. *Carilion Clinic*, 706 F.3d 319, 325 (4th Cir. 2013) ("[T]he FINRA Rules do give an informing context by providing that arbitrable disputes must arise in connection with the 'business activities' of the FINRA member, thus suggesting that for a person to obtain arbitration, the person must be a customer with respect to a FINRA member's business activities."). Hence, "'customer,' as that term is used in the FINRA Rules, refers to one, not a broker or a dealer, who purchases commodities or services from a FINRA member in the course of the member's business activities insofar as those activities are regulated by FINRA—namely investment banking and securities business activities." *Id.* at 327; *cf. Goldman, Sachs & Co* v. *City of Reno*, 747 F.3d 733, 741 (9th Cir. 2014) (adopting *Carilion* definition of "customer"); *Fleet Boston Robertson Stephens, Inc.* v. *Innovex, Inc.*, 264 F.3d 770, 773 (8th Cir. 2001) (holding FINRA predecessor National Association of Securities Dealers Rules were limited to members' regulated business activities).[7] The Seventh Circuit has not addressed this issue, and the court finds the other circuits' decisions persuasive.

---

[7] Defendants cite *Citigroup Global Markets, Inc.* v. *Abbar*, 761 F.3d 268 (2d Cir. 2014), as holding that opening any account with a FINRA member makes one a "customer" under Rule 12200. *Abbar* in fact held that to be a "customer," one had to open an account with a FINRA member, rather than an affiliate, and held that the defendant was not a "customer." *Id.* at 275–76. *Abbar* did not, as defendants suggest, address whether non-securities or investment banking accounts qualify.

Finally, this interpretation of FINRA rules harmonizes the rules with the carefully hewn balance between SEC and CFTC regulatory authority. *Amicus* highlights the danger of requiring parties to resolve commodity futures and options disputes before FINRA when Congress committed them to the CFTC. The CFTC has exercised its exclusive jurisdiction over the commodity futures and options market, *see* 7 U.S.C. § 2(a)(1)(A), to require its registrants to offer customers three arbitral forums in any arbitration agreement. 17 C.F.R. § 166.5(c). But if the court reads the FINRA rules to require those companies registered with both FINRA and the CFTC to arbitrate all customer disputes before FINRA, Rule 166.5 would have no effect as to some of the largest participants in CFTC-regulated markets. Defendants respond that Rule 166.5 permits arbitration before FINRA if the commission registrant chooses FINRA as its third option under subsection 5(i)(C), undercutting *amicus*'s claim that FINRA arbitration of this case would disturb any balance between commodities and securities regulation. But permitting parties to choose FINRA as an option[8] does not harm the regulatory balance as requiring them to offer FINRA arbitration as a supervening option beyond the CFTC's requirements would. Regardless, this policy consideration merely buttresses the conclusion the textual analysis produces.

For all these reasons, the court holds that "customer" under FINRA Rule 12200 means "customer of the member's FINRA-regulated activities."[9] Because commodity futures accountholders do not qualify as "customers," FCStone did not agree to arbitrate the underlying disputes before FINRA. And by signing the arbitration agreements, all defendants except the

---

[8] Unlikely, given the vehemence with which FCStone and *amicus* oppose it here, but theoretically possible.

[9] Because the court holds that FINRA Rule 12200 does not apply, it need not address the alternative argument that the arbitration agreements waived or superseded defendants' right to arbitration under that rule (or whether this issue is left to the arbitrator).

Motleys agreed to arbitrate their disputes before the NFA. As defendants refuse to arbitrate as agreed, relief is warranted under § 4 of the Federal Arbitration Act.

The motion to compel arbitration is granted. All defendants except the Motleys are ordered to submit their claims to arbitration before the NFA by June 28, 2019. The court also grants FCStone's related request for declaratory judgment (dkt. 33 at 15), as specified in the order below.

### III. Preliminary Injunction

The motion for preliminary injunction is denied without prejudice to refiling if FINRA does not decline jurisdiction in light of this court's ruling. As the court holds and declares that FINRA lacks jurisdiction, FINRA should sustain FCStone's objection to jurisdiction without further intervention from the court. *See Cent. States, Se. & Sw. Areas Pension Fund* v. *K&M Equip., Inc.*, No. 15 C 11586, 2016 WL 4270215, at *4 (N.D. Ill. Aug. 15, 2016) ("My finding . . . strips the arbitrator of his jurisdiction, so the pending arbitration and any future ones cannot go forward even without an injunction."). On the current record, therefore, the court cannot find irreparable injury or lack of a legal remedy.

### IV. Motion to Dismiss

As explained above, the court agrees with FCStone's interpretation of the arbitration agreements and FINRA rules. They thus state a claim for relief on all counts of the complaint. Defendants' motion to dismiss (dkt. 38) is denied.

### V. Motion for Sanctions

Defendants also move for Rule 11 sanctions for FCStone's failure to withdraw its motion for preliminary injunction. As relevant here, defendants must show that FCStone's counsel did not conduct a "reasonable inquiry" into the law or that its legal theory is objectively unwarranted

15

by existing law or a good-faith argument for the modification of existing law. *Thompson* v. *Duke*, 940 F.2d 192, 195 (7th Cir. 1991) (quoting *Szabo Food Serv., Inc.* v. *Canteen Corp.*, 823 F.2d 1073, 1080 (7th Cir. 1987)). Defendants insist that under Seventh Circuit precedent, it is impossible to suffer irreparable harm from arbitrating a claim. *See Trustmark Ins. Co.* v. *John Hancock Life Ins. Co. (U.S.A.)*, 631 F.3d 869, 872 (7th Cir. 2011); *AT&T Broadband*, 317 F.3d at 762 ("[W]e have held it sanctionably frivolous to seek an anti-arbitration injunction." (citing *PaineWebber Inc.* v. *Farnam*, 843 F.2d 1050 (7th Cir. 1988) and *Graphic Commc'ns Union* v. *Chicago Tribune Co.*, 779 F.2d 13, 16 (7th Cir. 1986))). On their reading, the worst that can happen to a party forced to arbitrate a claim it did not agree to arbitrate is to suffer the delay and expense of adjudication, which is not irreparable injury.

FCStone offers good-faith distinctions of *Trustmark* and *AT&T Broadband* based on a reasonable inquiry into the law. Defendant's expansive reading of *Trustmark* and *AT&T Broadband* is not the only possible one. Both cases expanded upon the strong language that the Seventh Circuit used in *PaineWebber* v. *Farnam*, 843 F.2d at 1052–53 and *Graphic Communications Union* v. *Chicago Tribune*, 779 F.2d at 16, to dissuade litigants from seeking to stay orders to compel arbitration pending appeal. If court-ordered arbitration constituted irreparable harm, many of those orders would have to be stayed pending appeal, thwarting the goals of the Federal Arbitration Act. *Id.* at 15–16; *Farnam*, 843 F.2d at 1052–53. In *AT&T Broadband*, after holding that the Norris-LaGuardia Act's prohibition on labor injunctions applied to labor arbitrations, the court cited *Farnam* and *Chicago Tribune* to further hold that AT&T could not prove irreparable injury from being forced to arbitrate. *Id.* at 762. And in *Trustmark,* the plaintiff agreed to arbitrate but sought to enjoin the proceedings mid-arbitration because it thought one arbitrator was biased. 631 F.3d at 871. The Seventh Circuit vacated the

district court's preliminary injunction because "Trustmark *did* agree to arbitrate" and because delay and expense of arbitration do not constitute irreparable injury. *Id.* at 872.

Despite their strong language, these cases do not mean that in the Seventh Circuit, courts may never enjoin arbitrations. At the outset, unlike FCStone's counterparts in all four cases, it does not seek an injunction to resist a court order or agreement to arbitrate; it seeks an injunction to effectuate one. And unlike in *Trustmark*, FCStone did not agree to arbitrate its disputes in the forum where it seeks to enjoin further proceedings. FCStone's motion for preliminary injunction thus seeks to avoid the distinct harm of a kabuki arbitration at FINRA running parallel to a court-ordered arbitration at the NFA. Though perhaps such an arbitration is just as expensive and labor-intensive as a court-ordered or contracted-for arbitration, FCStone can at least say in good faith that it has a legal case for irreparable harm in duplicative, unauthorized arbitration.

Moreover, FCStone supports these distinctions with authorities showing that injunctions against arbitration are permissible and common. The Federal Arbitration Act expressly contemplates them, allowing immediate appeals from orders enjoining arbitration, 9 U.S.C. § 16(a)(2), a provision that would make little sense if anti-arbitration injunctions were never allowed. The Seventh Circuit has indicated that anti-arbitration injunctions are permissible, including at least once after *Trustmark*. *See, e.g.*, *J.P. Morgan Chase Bank, N.A.* v. *McDonald*, 760 F.3d 646, 654 (7th Cir. 2014) (reversing and remanding denial of injunction against FINRA arbitration "for further proceedings . . . including possible reinstatement of injunctive relief against the arbitration"); *Int'l Med. Grp.* v. *Am. Arbitration Ass'n*, 312 F.3d 833, 843 (7th Cir. 2002) ("[A]ny party to an arbitration can obtain relief by seeking a stay against the party bringing the arbitration."). And courts in this district sometimes grant them, including after *Trustmark. E.g.*, *Shore* v. *Johnson & Bell*, No. 16-cv-4363, 2017 WL 714123, at *4 (N.D. Ill.

17

Feb. 22, 2017) (enjoining class arbitration); *Hospira, Inc.* v. *Therabel Pharma N.V.*, No. 12 C 8544, 2013 WL 3811488, at *15–16 (N.D. Ill. July 19, 2013) (enjoining arbitration); *Virchow Krause Capital, LLC* v. *North*, No. 11 C 8169, 2012 WL 123673, at *1 (N.D. Ill. Jan. 17, 2012) ("Forcing a party which did not consent to arbitration to participate in arbitration has been recognized *per se* as an irreparable harm.").

Defendants' reading of *Trustmark* and *AT&T Broadband* thus creates a paradox—anti-arbitration injunctions are expressly contemplated, commonly granted, and categorically prohibited. This recommends FCStone's distinctions and at the very least shows that it was not frivolous to ask for a preliminary injunction.

**ORDER**

The court enters a declaratory judgment that defendants agreed to arbitrate their disputes at the NFA and that FINRA Rule 12200 does not apply to the underlying commodity futures and options accounts and transactions here. It further declares as follows:

1. Defendants are not "customers" within the meaning of FINRA Rule 12200.

2. There is no agreement to arbitrate disputes between defendants and FCStone before FINRA.

3. FINRA lacks jurisdiction over the underlying disputes between defendants and FCStone.

4. All defendants except the Motleys entered into a valid and enforceable arbitration agreement with FCStone.

5. Because defendants either rejected or failed to choose a qualified arbitral forum under the arbitration agreements within forty-five days, FCStone properly chose the NFA.

6. The NFA is therefore the proper arbitral forum for the underlying disputes under the arbitration agreements.

Therefore, the court orders as follows: (1) FCStone's motion to compel arbitration (dkt. 33) is granted. Defendants (except the Motleys) are directed to submit their underlying disputes

to the NFA by July 2, 2019. (2) FCStone's motion for preliminary injunction (dkt. 7) is denied without prejudice; (3) defendants' motion to dismiss (dkt. 38) is denied; (4) defendants' motion for sanctions (dkt. 50) is denied. The matter is set for status on July 3, 2019 at 9:30 a.m.

Date: June 4, 2019

_____
U.S. District Judge Joan H. Lefkow